JOHN T. MORRIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16604. Promulgated February 7, 1929.

*Arthur S. Dayton, Esq.,* for the petitioner.
*Arthur Carnduff, Esq.,* for the respondent.

OPINION.

SIEFKIN: The petitioner sold 555 shares of stock of the Morris Smokeless Coal Co. to H. R. Tribou for $136,250, and derived a profit thereon of $70,000. The sole question to decide is whether all of this stock was sold in 1920 or whether one-half of it was sold in each of the years 1920 and 1921. The respondent held that all the stock was sold in 1920 and asserted the deficiency in tax herein upon the basis of the receipt of the full amount of the profit in 1920.

The real test of when the title to property passes is the intent of the parties. In *Hood* v. *Bloch*, 11 S. E. 910, the Supreme Court of West Virginia stated:

* * * In *Morgan* v. *King*, 28 W. Va. 1, this court, after an elaborate review of the authorities on the subject, held that "the question whether a sale of personal property is complete or only executory is to be determined from the intent of the parties as gathered from the contract, the situation of the thing sold, and the circumstances surrounding the sale."

By an option executed by petitioner and delivered to Tribou, the former agreed to sell all the stock to Tribou at any time within 15 days after December 7, 1920. During that period, on December 22, 1920, the parties held a conference and the petitioner refused to sell according to the terms of the option. He then proposed to sell Tribou one-half of the stock immediately and to sell him the other half on January 2, 1921. This was done in order to distribute the profit between the two years in order to reduce the amount of tax upon the sale. Tribou accepted the offer and petitioner instructed Hedrick to deliver the remaining half of the stock to Tribou on January 2, 1921, if Tribou on that date paid $68,125. Petitioner immediately left the conference.

The contract entered into between petitioner and Tribou on December 22, 1920, discharged any prior agreement between them. In *Poteet* v. *Imboden*, 77 W. Va. 570; 88 S. E. 1024, the Supreme Court of Appeals of West Virginia stated:

* * * It is well settled by this court and by other authorities, that a contract may be discharged by the parties thereto, by an entirely new one entered into by them with reference to the same subject matter, the terms of which are co-extensive with but repugnant to the original contract. *Marsh v. Despard*, 56 W. Va. 132, 49 S. E. 24; 3 Page on Contracts § 1354; *Grand Trunk W. Ry. Co.* v. *Chicago & E. I. R. Co.*, 141 Fed. 785, 73 C. C. A. 43. * * *

From all the evidence we are of the opinion that the parties intended that title to one-half of the stock should not pass until January 2, 1921. The fact that Hedrick did deliver the stock to Tribou in 1920 and that Tribou gave Hedrick a check for $68,125 in 1920, in our opinion does not affect the case. The check was dated January 2, 1921, and the petitioner's account was not credited with the amount until January 3, 1921. In the absence of evidence as to the basis used in accounting and in making his return, we assume that the petitioner was on the cash receipts basis. See *John A. Brander*, 3 B. T. A. 231. Only one-half of the stock was sold in 1920 and only $35,000 of the total profit derived from the sale of all the stock was income to petitioner in 1920.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

VAN FOSSAN concurs in the result only.

---

MURDOCK, dissenting: I dissent from the prevailing opinion in this case, which holds that, since the parties to the agreement of December 22 did not intend that title to one-half of the stock should pass in the year 1920, therefore, one-half of the profit was not taxable in that year. This opinion also states that the fact that Hedrick did deliver the stock to Tribou in 1920, and in the same year received a check for $68,125 in payment for the stock from Tribou, does not affect the case. I can not agree with this reasoning. The method used by the petitioner in keeping his books and making his income-tax return has not been shown. The case of *John A. Brander* cited is not in point. If the petitioner used some accrual method, then it seems to me the Commissioner's determination is correct, for upon the delivery of the stock to Tribou under the circumstances stated, a right to receive the agreed purchase price would immediately accrue to the petitioner. It does not appear that he ever repudiated Hedrick's act in delivering the stock and receiving the check in 1920. On the contrary, he apparently ratified this act. It will be noted that this act was not in accordance with the agreement of the parties and therefore the original intent of the parties would make no difference because their agreement was not carried out. Furthermore,

even if the petitioner used the cash method of keeping his books and reporting his income, since as I say, he apparently ratified Hedrick's unnoticed act, it might be that he received the equivalent of cash in the year 1920, but it is not necessary to discuss this question in a dissenting opinion.

SMITH agrees with this dissent.